**Evelyn P. BURRELL, Appellant,**

v.

**Fred MARTIN et al., Appellees.**

**No. 12376.**

United States Court of Appeals
District of Columbia Circuit.

Nov. 10, 1955.

Mr. Frank D. Reeves, Washington, D. C., for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., for appellees. Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., also entered appearances for appellees.

Before EDGERTON, Chief Judge, and BAZELON and WASHINGTON, Circuit Judges.

BAZELON, Circuit Judge.

Appellees filed a suggestion of mootness after this appeal, involving appellant's effort to obtain reinstatement to her Government job, had been submitted for final disposition. To properly understand the issues we face, the background of this litigation must be told.

### I.

The story starts on February 29, 1952, when the Department of the Army instituted a loyalty proceeding against appellant by notifying her that she was being removed from her position as a clerk-typist under an indefinite Civil Service appointment, because "information received at this Depot, as a result of a loyalty investigation, indicates that there is a question of your loyalty to the Government of the United States." On April 14, 1952, she was restored to her job. On the following day, the Army commenced a security proceeding by a notice of suspension which stated: "Immediate suspension is deemed necessary in the interest of national security under authority of Public Law 733, 81st Congress,[1] pending adjudication of your case * * *."[2]

On May 13, 1952, the Chairman of the Army's Loyalty-Security Screening Board wrote appellant that information had been received which required formulation of charges against her with a view to effecting her removal under Public Law 733. Nine specific charges were stated and all appeared under the heading "security." Three days later, however, appellant was again "returned to duty"; this time, as the notice stated, "because letter of charges were [sic] not received from Loyalty-Security Screening Board." But this reprieve ended after six days with another suspension when it appeared that appellant had received the May 13 letter containing the charges against her. Appellant answered the *security* charges contained in the May 13 letter and requested a hearing. A hearing was held by an

---

1. Public Law 733, 81st Cong., 2d Sess., 64 Stat. 476 (1950), 5 U.S.C. § 22–1, provides in pertinent part: "Notwithstanding the provisions of section 652 of this title, or the provisions of any other law * * * the Secretary of the Army * * * may, in his absolute discretion and when deemed necessary in the interest of national security, suspend, without pay, any civilian officer or employee of the * * * Department of the Army * * *. The agency head concerned may, following such investigation and review as he deems necessary, terminate the employment of such suspended civilian officer or employee whenever he shall determine such termination necessary or advisable in the interest of the national security of the United States, and such determination by the agency head concerned shall be conclusive and final * * *."

2. No explanation of why appellant was restored to her job on April 14, 1952, appears in the record. It should be noted, however, that the restoration and immediate suspension changed appellant's status from that of a removal on grounds of *loyalty* to a suspension on grounds of *security*, and thus brought the Army's action under the provisions of Public Law 733, set forth in note 1, supra.

Army Loyalty-Security Hearing Board at Fort Meade, Maryland, on September 16 and 17, 1952.

Before this hearing took place, however, the Civil Service Commission had instituted a *loyalty* investigation by letter of August 4, 1952, from its Fourth Regional Loyalty Board.[3] The letter advised appellant that, during an investigation of her suitability for appointment as a clerk-typist, information had been received which required clarification. Appellant answered the enclosed interrogatory and requested a hearing. This hearing was held on September 26, 1952, ten days after the Army *security* hearing at Fort Meade, referred to above.

By letter of December 9, 1952, the Regional Board advised appellant that it found (1) reasonable doubt of her loyalty and (2) "unsuitab[ility] for Federal employment because of your *false* statements concerning *material loyalty matters* at the hearing \* \*."[4] Appellant appealed to the Commission's Loyalty Review Board. In response to her inquiry, that Board described the false statements referred to by the Regional Board, as set forth below.[5] After a hearing, the Review Board advised appellant's attorney by letter of May 1, 1953 that

"\* \* \* on all the evidence, there is not a reasonable doubt as to Mrs. Burrell's loyalty to the Government of the United States, thereby reversing the Regional Loyalty Board on the loyalty issue.

"However, the Civil Service Commission affirmed the ineligible decision on grounds of suitability *other than loyalty*. Therefore, the De-

3. With the exception of the removal on February 29, 1952, all action taken by the Army against appellant was on grounds of *security*. All action taken against her by the Civil Service Commission was on grounds of *loyalty* or unsuitability for reasons other than loyalty.

4. Emphasis supplied. This letter also stated that "As the result of the above decisions your separation from the Federal service has been instructed, all existing eligibilities or applications are considered cancelled and you have been barred from competing in the Federal Civil Service examinations and from accepting employment in the Federal service for a period of three years from the date of your separation."

5. "1. Mrs. Burrell's admissions concerning her negative answer on Applications for Federal employment which she completed in 1951–1952, to the question relating to present or past membership in Communist organizations. The Board concluded that she was aware of the Communist nature of the Washington Bookshop when she filled out these applications. Mrs. Burrell had been questioned about the Washington Bookshop affiliation in the interrogatory issued to her on November 14, 1949, and she admitted prior membership in that organization. In answer to question VII on the current interrogatory she answered 'No.'

"2. Mrs. Burrell's answer to Interrogatory VI, part (c) concerning her association with alleged Communists, and the portion of her statement denying knowledge of Communist affiliation on the part of any of her associates. This statement is as follows: 'I would like to preface my answers by saying that I do not know any of the persons named herein to be Communists, Communist sympathizers or otherwise subversive characters; nor any other persons with whom I have, or do now associate', and 'If the persons named in the interrogatory, or other persons connected with the Committee for Fair Employment Practices are Communists, Communist sympathizers, or otherwise subversive, I had no knowledge of it at the time I was associated with them, nor have I now, beyond that which has come to me through this inquiry.'

"3. Mrs. Burrell's answer to Interrogatory VI, part (b), which reads in part as follows: 'I have on no occasion, aided, acquiesced, or participated in any activity on behalf of Communists, or any activity which might be construed as such.'

"4. Mrs. Burrell's denial of attending a social at the home of [names deleted] on September 1, 1951, one of several socials planned by Communist Party members for the purpose of raising funds for the defense or [sic] arrested Communist Party leaders.

"5. Mrs. Burrell's denial she made a statement to the effect that despite [name deleted] conviction she felt she was his friend regardless of whether or not he was a member of the Communist Party."

partment of the Army has been directed to remove Mrs. Burrell from the service. * * *" [Emphasis supplied.]

It appears, from the papers before us, that the Commission's affirmation of the "ineligible decision" was embodied in an order dated April 28, 1953.

Thus what began as an investigation into appellant's loyalty ended in a determination that she was loyal, but that her removal was nevertheless required on grounds of suitability other than loyalty.[6]

Five days later the Army wrote appellant:

"As your counsel has been advised, final decision on the security case has been held pending final action by the Civil Service Commission on the loyalty and suitability issues. Since you are to be or have been removed by order of the Civil Service Commission under Civil Service regulations, further action on the security case and decision on whether you should be removed under Public Law 733, 81st Congress have become unnecessary. Consequently, no further action on the security case will be taken and *it is considered closed.*" [Emphasis supplied.]

On May 12, 1953, appellant protested the termination of the security case without decision, and requested a decision in accordance with the Army's regulations which required the Loyalty-Security Hearing Board to determine either that removal would serve the interest of national security or that it would not.[7] The protest appears to have been ignored.

Appellant brought this suit on August 27, 1953, for relief against various Government officials and members of the Loyalty Boards. She prayed, *inter alia,* for a declaration that she was improperly suspended and removed from her position as payroll clerk at the Curtis Bay Sub-Depot of Letterkenny Ordnance Depot and that she was entitled to reinstatement; and for an order directing reinstatement and back pay. On cross-motions, the District Court granted summary judgment in favor of the appellees. Appellant brought this appeal and filed her brief on October 27, 1954. Appellees requested and were granted six extensions of time for filing their brief. In granting the sixth extension to April 18, 1955, we indicated we would grant no more. Then, on the last day of the extension, appellees filed a motion to remand the case to the District Court "with directions to vacate the order [granting appellees' motion for summary judgment] and to refer this matter back to the Civil Service Commission for a supplemental ruling."

The motion stated that, in declaring appellant ineligible, the Commission acted under its regulation which provides that eligibility may be denied for *"intentional false statements."*[8] The motion pointed out that although "appellant's status as an indefinite appointee was protected by [this regulation] * *. The *required* finding of intentional falseness *has not been made* or rejected by the Commission." [Emphasis supplied.] The stated purpose of the motion was to allow the Commission to supply this required finding retroactively. At oral argument, counsel for appellees requested that, if the motion was denied, we should finally dispose of the case without their brief, since their position had been fully presented in connection with the motion.

Before we were able to act, however, appellees filed the suggestion of moot-

---

6. On May 21, 1953, appellant requested review by the Civil Service Commission of the determination of ineligibility. Review was denied by letter of June 8, 1953.

7. Special Regulations of the Department of the Army, No. 620-220-1 (1950), at p. 12.

8. Citing 5 C.F.R. § 2.104(a) (4) (1949), which now appears as 5 C.F.R. § 2.106 (a) (4) (Supp.1955).

ness on September 27, 1955. In pertinent part, the suggestion states that

"On September 26, 1955, both appellees and appellant were informed by the Civil Service Commission that the Commission (1) had vacated its own prior decision and (2) a decision of the Fourth Civil Service Region, both of which were adverse to appellant; and (3) had ordered the Department of the Army to reinstate appellant to her former position in government employment. The Commission has, by this action, granted all the relief which could have been granted by the District Court."[9] Appellant's reply states that

"By letter dated 28 September 1955, two days after appellees filed their suggestion of mootness, the Civilian Personnel Officer for the Letterkenny Ordnance Depot, informed the appellant as follows:

" 'You are advised that this Activity has received a letter from the Chairman of the United States Civil Service Commission advising that upon reconsideration of your case they have vacated the previous decision concerning your removal from the Depot, ineligibility for Federal employment, and debarment on the ground of unsuitability. The attached Standard Form 50, Notification of Personnel Action, is your official notification that the

removal action, dated 6 May 1953, is cancelled.

" 'As stated on the Standard Form 50, cancelling the removal action, *you revert to the suspension status effected on 22 May 1952 under Public Law 733, which was the condition of employment at the time of your* removal. (Emphasis supplied.)

" 'You will be notified by the Office, Secretary of the Army of further developments pertaining to your security case.' "

The appellant's reply adds:

"To date, appellant has not been returned to duty and pay status nor has she been informed of 'further developments pertaining to [her] security case.' "

## II.

■■ It is clear, of course, that the Commission's recent order of September 21, 1955, vacating its discharge action of April 28, 1953, renders moot appellees' request to refer the case back to the Commission for a supplemental finding. But we conclude that this recent order does not moot the case and that we should proceed to a final disposition of this appeal.

When appellant filed the complaint herein, the controversy with respect to her asserted right to relief of reinstatement "to her position as payroll clerk" was both real and ripe.[10] The

---

9. The specific language of the Commission's order, as set forth in appellant's reply, is as follows:

"Upon reexamination of the facts and circumstances of this Commission's Order dated April 28, 1953, affirming the discharge of Evelyn P. Burrell on the grounds of unsuitability, and it now appearing that the matters dealt with in that proceeding *would fall more properly within the coverage of Executive Order No. 10450* of April 27, 1953 it is by the Commission this 21st day of September, 1955,

"ORDERED: (1) That the previous order of this Commission dated April 28, 1953, relating to Evelyn P. Burrell, be and the same is hereby vacated;

"(2) That the Fourth Regional Office decision be and the same is hereby reversed; and,

"(3) That the Department of the Army be directed to restore Evelyn P. Burrell to the position she occupied at the time of her removal or to a similar position." [Emphasis supplied.]

10. A moot case has been defined as " * * one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, *or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then exist-*

Commission's subsequent action has produced only reinstatement by the Army to "her suspension status." This, to put it mildly, is considerably less than the relief she seeks. Hence a real and ripe controversy remains.[11]

Appellees urge that the case is nevertheless moot because the court is without jurisdiction to order any reinstatement relief against the Army. Jurisdiction is said to be lacking because appropriate officials of the Army, who were named in the complaint, were not served or properly served. This contention does not bear scrutiny.

If the circumstances of the Commission's direction to reinstate appellant and the Army's failure to comply had occurred while this case was still pending before the District Court, appellant would have had the opportunity to obtain leave of that court to bring Army officials formally before the court.[12] It follows, we think, upon plain principles of equity, that appellant should not be deprived of such opportunity and put upon another long "merry-go-round of litigation"[13] simply because these circumstances, which she could hardly have anticipated, occurred after this appeal was brought. We therefore conclude that appellant should be accorded this opportunity in further proceedings.

We think disposition of this appeal must also include a decision respecting the validity of the Commission's discharge order of April 28, 1953, since that decision "may affect the rights of the litigants."[14] In its order of September 21, 1955, the Commission left no doubt that its discharge order was vacated, not because it appeared that the order was invalid, but because it appeared "* * * that the [unsuitability] matters dealt with in [the discharge] proceeding would fall more properly within the coverage of Executive Order No. 10450 * * *."[15] This makes plain that the Commission does not agree with appellant that the discharge order was invalid when entered and that she has therefore been illegally kept from her position as payroll clerk for more than three years.

An adjudication of the invalidity of the discharge may affect appellant in two important ways. First, it may have a material bearing on the controversy over reinstatement which is still extant. This derives from the reasonable possibility that the Army's present failure to reinstate appellant may rest, at least in part, on the matters involved in the Commission's discharge.

Second, an adjudication may also have a practical effect on appellant's right to collect back pay for the period of her illegal discharge.[16] Under the

ing controversy." Ex parte Steele, D.C. N.D.Ala.1908, 162 F. 694, 696, 701, emphasis supplied. For a general discussion of mootness, see Note, Cases Moot on Appeal: A Limit on the Judicial Power, 103 U. of Pa.L.R. 772 (1955); Diamond, Federal Jurisdiction to Decide Moot Cases, 94 U. of Pa.L.R. 125 (1946).

11. See Standard Fashion Co. v. Magrane-Houston Co., 1922, 258 U.S. 346, 353, 42 S.Ct. 360, 66 L.Ed. 653; Snow v. Snow, 1921, 50 App.D.C. 242, 243, 270 F. 364, 365; and Note, Cases Moot on Appeal, supra, at p. 778.

12. Fed.R.Civ.P. 19, 28 U.S.C. While it is highly unlikely that the Army would, by objecting to lack of service, frustrate any reinstatement relief ordered by the court, Cf. United States v. City of New York, 2 Cir., 1949, 175 F.2d 75, 77, the Army's formal appearance would, of course, insure the effectiveness of such relief.

13. Melvin v. Melvin, 1942, 76 U.S.App.D.C. 56, 59, 129 F.2d 39, 42 (concurring opinion of Mr. Justice Rutledge), quoted in Hopson v. Hopson, D.C.Cir., 1955, 95 U.S.App.D.C. 285, 288, 221 F.2d 839, 842.

14. Collins v. Porter, 1946, 328 U.S. 46, 48, 66 S.Ct. 893, 90 L.Ed. 1075.

15. Note 9, supra. Executive Order No. 10450, 3 C.F.R. 72 (Supp.1953), was promulgated April 27, 1953, almost two and one-half years ago. No explanation is given as to why its applicability was not considered until now.

16. Merely "vacating" the order does not make moot a decision as to its legality, since the right to back pay may be de-

Tucker Act,[17] of course, only the Court of Claims has jurisdiction to determine the merits of appellant's monetary claim. But we recognized in Almour v. Pace that "the District Court can properly declare individual rights, even though the plaintiff also possesses and is seeking to advance a monetary claim," where, as here, the plaintiff has "requested an order which would affect his status or establish his rights *as to the future* vis-a-vis some governmental agency."[18]

### III.

We turn now to consider the merits of the discharge issue. Appellees' now mooted motion to refer the case back to the Commission for a supplemental finding was clearly premised on their view that the finding of "intentional" falseness is not only required but also that it must be express. Under this view, of course, the Commission's determination of unsuitability is invalid since it made no such express finding. But in a written memorandum, filed by appellees on August 30, 1955, in connection with certain questions we propounded after that motion was argued and submitted, they urged that, although the finding is required, it need not be express but may be derived, by implication, from the ultimate determination of unsuitability. We think this contention must fail.

The primary purpose and concern of the Commission proceeding related to the issue of loyalty, not suitability. The Commission's Loyalty Review Board, although it had before it the regional board's finding that appellant had made "false statements" concerning material loyalty matters, determined the loyalty issue in her favor. It is hardly realistic to assume that the Review Board could or would have done so had it found that she lied—made *intentional false statements*—in answers to the critically important questions relating directly to the primary issue of loyalty. Nor can it be assumed, in the absence of an express finding, that the Commission, acting simultaneously and upon the same record with respect to these questions, could or would have so found. Moreover, in the record now before us, there is no evidence from which we can draw support for such a finding. That record consists only of appellant's answers to interrogatories and oral testimony by her and her husband. It contains no testimony against her.[19]

The Supreme Court "has recognized that 'a badge of infamy' attaches to a

pendent on such a decision. See Southern Pacific Co. v. Interstate Commerce Comm., 1911, 219 U.S. 433, 452, 31 S.Ct. 288, 294, 55 L.Ed. 283, where the Court held that a determination of the validity of an I.C.C. order which had "spent its force" was not moot "in view of the possible liability for reparation to which the railroads might be subjected if the legality of the order were not determined * * *."

17. 62 Stat. 933 (1948), as amended, 28 U.S.C. § 1346(d) (1952).

18. 1951, 90 U.S.App.D.C. 63, 66, 193 F.2d 699, 701.

Appellees also urge that, even if removal was improper here, appellant's status as a non-classified civil servant precludes recovery in the Court of Claims, citing Nadelhaft v. United States, Ct.Cl.1955, 131 F.Supp. 930. Whether that case would bar appellant is a question which must be reserved for the Court of Claims.

19. It appears that the Commission considered materials which are not contained in the record before this court. At the outset of the hearings before the Regional Loyalty Board, its chairman stated that "when the transcript is prepared it will *not* include all the material in the file of the case, in that it will not include reports of investigation conducted by the Federal Bureau of Investigation which are confidential. The transcript also will not contain information concerning the identity of confidential informants. In other words, the transcript will contain only the information set forth in the Interrogatory which you received and the evidence actually taken at this hearing."

See discussion of "faceless informers" in concurring opinion of Mr. Justice Douglas in Peters v. Hobby, 1955, 349 U.S. 331, 351, 75 S.Ct. 790.

public employee found disloyal."[20] Though appellant was ostensibly cleared on loyalty charges, the charges on which she was found unsuitable are of the same stuff and stain. The Commission's action kept the word of promise to the ear but broke it to the hope. And now— two and one-half years later—it finds that "the matters dealt with * * * would fall more properly within the coverage of Executive Order No. 10450,"[21] to wit, the loyalty-security order.

Moreover, we are unable to find a jot or tittle in the record before us of the Commission and District Court proceedings concerning the regulation which prescribes "intentional" falsity as a ground of ineligibility and upon which appellees relied in this court, in their motion to remand, as the sole authority for the Commission's action. Hence it does not appear that the Commission was even aware of the applicability of the regulation when it considered and reached its determination of unsuitability.

Without deciding whether or in what circumstances we could ever imply the crucial finding of intentional falsity in a case of this sort, we cannot imply it in the foregoing circumstances.

■ We hold the Commission's action invalid for lack of a required essential finding. We therefore reverse and remand to the District Court with directions to vacate its order granting summary judgment for appellees; to grant appellant's motion for summary judgment declaring the Commission's discharge order of April 28, 1953 invalid; to grant appellant opportunity to serve the appropriate officials of the Department of the Army; and thereafter to consider what further relief, such as reinstatement, may properly be awarded in the further proceedings required by this opinion.

Reversed and remanded with directions.

20. Peters v. Hobby, 1955, 349 U.S. 331, 347, 75 S.Ct. 790, 798, citing Wieman v. Updegraff, 1952, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216.