The **COMMITTEE FOR NUCLEAR RESPONSIBILITY, INC., et al.**

v.

**Glenn T. SEABORG et al., Appellants.**

No. 71–1854.

United States Court of Appeals, District of Columbia Circuit.

Argued in Misc. No. 3714 Oct. 27, 1971.

Decided Oct. 28, 1971.

As Amended Nov. 3, 1971.

See also D.C.Cir., 463 F.2d 796.

Mr. Edmund B. Clark, Atty., Department of Justice, with whom Asst. Atty. Gen. Shiro Kashiwa and Messrs. Thomas L. McKevitt and Peter R. Steenland, Attys., Department of Justice, were on the pleadings, for appellants.

Mr. David Sive, New York City, a member of the bar of the Supreme Court of New York, pro hac vice, by special leave of court, with whom Mr. Harold Green, New York City, was on the pleadings, for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

PER CURIAM:

This appeal presents a new chapter in the litigation concerning the proposed underground nuclear test, code-named Cannikin, on Amchitka Island, Alaska. In Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D. C. ——, 463 F.2d 783, No. 71–1732, 1971, we held that plaintiffs—conservation groups—had presented a cognizable claim, which the courts were obligated to determine, that the Atomic Energy Commission had failed to carry out the mandate of Congress in the National Environmental Policy Act (NEPA), 42 U.S. C. § 4331 et seq. (1970), to set forth all pertinent environmental effects of the project, and thus to provide the disclosure which is indispensable to informed appraisal of the project by the Executive, Congress, and, the public. We remanded the case to the District Court so that plaintiffs might present evidence in support of their allegations, and continue the pretrial discovery that had been untimely curtailed by the government's motion to dismiss the lawsuit.

On remand plaintiffs sought to have the government produce documents in its possession allegedly containing information needed by plaintiffs for substantiation of their claim. The government resisted and raised a claim of executive privilege. To resolve the question of privilege, the District Court ordered the government to submit the documents at issue for personal *in camera* inspection by the District Court after exercising any and all materials reflecting military and diplomatic secrets as distinguished from possible environmental hazards of the test. The order included a certification under 28 U.S.C. § 1292(b) of the controlling importance of the questions presented.[1] The government filed an

---

1. A copy of the District Court's order is appended to this opinion. The District Court had previously filed with this Court, on October 20, 1971, a *Request for Further Guidance on the Perimeters of Discovery* contemplated by our first opinion in this case, No. 71–1732. In a Memorandum Order, filed the following day, we indicated our appreciation of the District Court's initiative shown in the request, but declined to give further guidance because at that juncture, the Court had:

not been apprised of the particular objections made by the Government to plaintiffs' applications for discovery. Our Memorandum Order of October 19, 1971, requested that the Government advise us of those objections, but a statement of objections was not supplied

application for allowance of an immediate appeal, challenging the District Court's order on the grounds that executive privilege precludes even *in camera* screening by the District Court. We grant the appeal and affirm the order of the District Court. Respondents in this proceeding, plaintiffs below, request a stay of the blast *pendente lite*. For the reasons set forth below, we deny the stay.

## I.

Disposition of the matters before us has been expedited in view of the announcement, made to the Court at oral argument yesterday afternoon, that less than two hours earlier the Atomic Energy Commission had issued a press release stating as follows:

### STATEMENT BY AEC CHAIRMAN JAMES R. SCHLESINGER

The Atomic Energy Commission is now planning to proceed with the Cannikin test. We have now received the requisite authority to go ahead including detonation. Stemming operations at the test site, which make it impractical to recover the device, will begin today. We expect to be in a readiness state to detonate within a week.

The primary purposes of Cannikin are to proof test the Spartan warhead and to obtain measurements on yield and on x-ray flux and spectrum. Testing is regarded as a desirable and prudent step before large investment of funds is made on that component of the Safeguard system. From the national security standpoint no serious objection has been raised against conducting the test. On that score the case is straightforward.

because the proceedings before us were mooted by the Government's disclosure that detonation would not in any event take place prior to October 27, 1971. We left open, however, the possibility of a future interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The District Court, in following that procedure here, has now focused the issues involved for our decision.

Some objections have been raised on environmental grounds. In the careful examination of these issues within the Executive Branch environmental damage has been exhaustively considered and overriding requirements of national security have, of necessity, taken precedence.

■ The government suggests that the developments recounted in the statement may render the case moot. That suggestion is not sound. As our opinion of October 5 made clear, the recent action of Congress[2] requiring the President personally to approve the test before it can go forward does not negate the AEC's obligation to comply with NEPA. Approval by the President and compliance with NEPA are two separate statutory requirements which must be satisfied if the test is to be lawfully carried out. The President's decision satisfies one requirement. This Court, as to the second requirement of law, is left with the responsibility to determine whether the AEC disregarded the will of Congress in preparing the environmental impact statement required by NEPA.

## II.

■ Documents such as those encompassed in the District Court's order would normally remain part of the internal files of the agencies involved in the absence of an appropriate demand. When such demand is made in conjunction with discovery sought in the courts, the settled rule is that the court must balance the moving party's need for the documents in the litigation against the reasons which are asserted in defending their confidentiality.[3]

2. Pub.L.No. 92–134, 85 Stat. 365 (1971).

3. *See, e. g.*, United States v. Reynolds, 345 U.S. 1, 11, 73 S.Ct. 528, 97 L.Ed. 727 (1953), Carl Zeiss Stiftung v. V. E. B., Carl Zeiss, Jena, 40 F.R.D. 318, 327 (D.C.1966) (hereinafter *Zeiss*) aff'd on the basis of the opinion of the District Court in 128 U.S.App.D.C. 10, 384 F.2d 979, cert. den'd 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

The government's interest in confidentiality is plain where the documents make reference to military or diplomatic secrets. But plaintiffs indicated clearly that they seek no such secrets, and the District Court's order explicitly provides that the government is not required to produce any documents or parts of documents which contain such secret material.

■ ■ The government may still have an interest, however, in avoiding disclosure of documents which reflect intra-executive advisory opinions and recommendations whose confidentiality contributes substantially to the effectiveness of government decision-making processes.[4] *In camera* inspection of allegedly privileged documents—as ordered here by the District Court—is a procedure approved by the courts at least where, as here, military and diplomatic secrets are not at issue.[5] Of course, the party seeking discovery must make a preliminary showing of necessity to warrant even *in camera* disclosure,[6] but there is no claim on this appeal that plaintiffs have not made such a showing or that the District Court's order is erroneous for lack of such a showing.

The purpose of *in camera* inspection by the District Court is to permit the District Judge to examine the documents and determine which documents, or which portions of documents, may properly be disclosed to the other party, and which should continue to be held in a confidential status. This determination may come to require e. g., separation of those documents or portions of documents that set forth facts from those that present comments that must be held confidential in order to maintain the integrity of the executive decision-making process.

However, the government seeks to distinguish all those cases [7] where it was required to produce documents for *in camera* inspection on the ground that in those cases the government gave reasons to the court for withholding disclosure. In this case, says the government, it is invoking "true" executive privilege—and is not offering any reasons to the court. The claim of privilege consists of the filing of affidavits from the five officials heading the agencies where the documents are located. Each of those officials avers that he has determined that the documents in his official custody may not be produced for the personal *in camera* inspection of the judge, on the ground that such disclosure even to the judge would be contrary to the public interest. The government's position—sharpened at oral argument yesterday—is that this determination by the executive official is conclusive upon the court, and the court has no judicial authority to require the production of the documents in the possession of an executive department, once the head of that department has filed this formal claim of privilege. Government counsel further asserts that this executive determination is conclusive even where the document only relates to certain factual material that is essential for disposition of the lawsuit, and even where the document is such that the court may readily separate factual material to be disclosed to the other party from the kind of recommendations and discussion that would be an integral part of the decision-making process.

■ In our view, this claim of absolute immunity for documents in possession of an executive department or agency, upon the bald assertion of its head, is not sound law.

---

4. *Zeiss* 40 F.R.D. at 324.

5. *See, e. g.*, Freeman v. Seligson, 132 U.S. App.D.C. 56, 69 n. 65, 405 F.2d 1326, 1339 n. 65 (1968), Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 114, 280 F.2d 654, 662 (1960).

6. *See, e. g.*, United States v. Reynolds, 345 U.S. 1, 11, 73 S.Ct. 528, 97 L.Ed. 727 (1953), *Zeiss* 40 F.R.D. at 327.

7. *E. g.*, Machin v. Zuckert, 114 U.S.App. D.C. 335, 316 F.2d 336 (1963), cert. denied 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963).

There are some cases that hold that the court may not require production from a subordinate official when his departmental regulation requires that the decision on production should be first presented to the head of the department. Boske v. Comingore, 177 U.S. 459, 20 S. Ct. 701, 44 L.Ed. 846 (1900); United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). But as Justice Reed pointed out in the latter case, these decisions went to the point of "centralizing determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged," 340 U.S. at 468, 71 S.Ct. at 419. When it is the *head* of the executive department who presents a challenge to an order requiring the production of documents, the claim of privilege is one for consideration by the court, which could give attention to the reasons presented by the head of the agency for failing to produce the information.

■ These early cases were based on a "housekeeping" provision, now codified as 5 U.S.C. § 301 (1970), which authorized each department to issue regulations with respect to custody of its papers. This statute does permit centralization of responsibility in a department whether to claim a privilege. But as the Fifth Circuit has held, it does not confer a privilege, and this view of its intendment is fortified by the 1958 amendment which added the following language: "This section does not authorize withholding information from the public or

limiting the availability of records to the public." [8] Such statutes must be read in light of the importance of the rule of law, and the fair administration of justice, of permitting limited disclosures in judicial proceedings, with judicious use of protective orders. *See* Freeman v. Seligson, 132 U.S.App.D.C. 56, 78, 405 F.2d 1326, 1348 (1968).

The last claim of the government is an appeal to the doctrine of Separation of Powers. It is argued that the inherent constitutional powers of the executive branch give it the legal authority to determine what documents in its possession will be produced in court.

■ There is no direct Supreme Court precedent. The question was noted, but not decided, in United States v. Reynolds, 345 U.S. 1, 16, 73 S.Ct. 528, 97 L.Ed. 727 (1952). The view of this Court is determined by fundamental legal principles, and principally the root conception of the rule of law in our democratic society. An essential ingredient of our rule of law is the authority of the courts to determine whether an executive official or agency has complied with the Constitution and with the mandates of Congress which define and limit the authority of the executive. Any claim to executive absolutism cannot override the duty of the court to assure that an official has not exceeded his charter or flouted the legislative will.

Of course the court exercises its authority with due deference to the position of the executive. It will take into

---

8. *See*, N.L.R.B. v. Capitol Fish Co., 294 F.2d 868, 875 (5th Cir., 1961):

> 5 U.S.C.A. § 22 [now § 301] cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority. It cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged. Had there been any doubt of this before, the doubt was removed by the amendment of 5 U.S. C.A. § 22 [now § 301] in 1958 making explicit the fact that the section does

> not of itself create a privilege. This amendment added the sentence, "This section does not authorize withholding information from the public or limiting the availability of records to the public." 72 Stat. 547 (1958). As a matter of comity, courts frequently do not require disclosure of the evidence when the circumstances indicate that the records should be confidential; if the court wishes to scrutinize it to make sure, the evidence may be examined in camera. But the ultimate determination of the privilege remains with the courts. (Citations omitted)

account all proper considerations, including the importance of maintaining the integrity of executive decision-making processes. But no executive official or agency can be given absolute authority to determine what documents in his possession may be considered by the court in its task. Otherwise the head of an executive department would have the power on his own say so to cover up all evidence of fraud and corruption when a federal court or grand jury was investigating malfeasance in office, and this is not the law.

■■ With the power of the District Court to determine the question of privilege thus firmly established in the context of the controversy as it has been presented to us, we think it is plain that the judgment of the District Court must be affirmed. We are issuing our order so that the executive officials may proceed at once to carry out the order of the District Court. When the documents are produced before the District Judge for his personal *in camera* inspection, he will consider whether the plaintiffs' need for access to the documents, or any part of the documents, for purposes of this litigation must be overridden by some higher requirement of confidentiality.

■ Normally this balancing process will require an excision, from the factual data in the documents, of material which consists purely of advice, deliberations and recommendations.[9] Certain of the documents, though, may constitute agency comments whose existence prior to the issuance of the impact statement in final form required their inclusion in the statement by virtue of section 102 of NEPA, 42 U.S.C. § 4332(2) (C) (1970).

The Atomic Energy Commission, which prepared the environmental impact statement, was "responsible for making the statement and the comments received available to the public pursuant to the provisions of the Freedom of Information Act." *See* 36 Fed.Reg. 7724, 7726–27, § 10(f) (1971). These regulations, promulgated by the Council on Environmental Quality to implement NEPA, specify that the exemption for inter-agency memoranda is not applicable concerning the comments of federal agencies to be consulted in connection with the preparation of an environmental statement. And section 7 of those regulations specifically states that the project agency "should consult with and obtain the comment on the environmental impact of the action of federal agencies with jurisdiction by law or special expertise with respect to any environmental impact involved." [10] The Environmental Protection Agency—one of the agencies from whom a document was requested by the District Court—is specifically identified in this regulation as one of the agencies within the contemplation of section 7. The answer to the question of whether the statement by the Environmental Protection Agency mentioned in the District Court's order is required by NEPA to be included in the impact statement can only be determined after an *in camera* view.[11]

As to the documents not related to the NEPA process, the District Court's responsibility requires that it balance the need of the plaintiffs in the litigation brought to assure conformance to legislative will, against the necessity for confidentiality, as detailed above.[12]

9. *See Zeiss* 40 F.R.D. at 324.

10. 36 Fed.Reg. 7724, 7725, § 7 (1971).

11. Our opinion of October 5, 1971, indicated that an agency responsible for a project should obtain and release reports of federal agencies on the environmental effect of a project, but specifically reserved, at page 9, note 16, the question of disclosure of agency comments that are not so related to the impact statement as

to require their inclusion therein, or are included within the exemptions of the Freedom of Information Act.

12. In this process, the District Court must make, e. g., the judgments required to separate fact from opinion. And, as already noted in our opinion of October 5, the facts in this litigation include whether there is a body of opinion that was not fairly reflected in the AEC en-

We are not now addressing ourselves to the question of the obligation of the Atomic Energy Commission to include in the environmental statement other information that came into its possession prior to the issuance of that document. That is the ultimate issue for the District Court to determine in this litigation. Nor are we required to determine which official reports should be disclosed to the plaintiffs, or what portions of those reports should be disclosed. The only question which we decide now is that the District Court was correct in requiring an *in camera* investigation as a first step in ruling on the plaintiffs' request for disclosure and the proper extent of any government privilege.

▮▮▮▮ Plaintiffs' application for a stay *pendente lite* confronts the Court with an inherent limitation on its scope and information. The AEC release yesterday, reflecting the President's approval of the test, states that the Executive Branch has considered problems of environmental damage and has given precedence to "overriding requirements of national security." The Court is concerned solely with the question of legality of the AEC action under NEPA and its obligation to determine that question. It is in no position to consider or appraise the national security aspects of the test underlying the President's determination. It is the responsibility of the Executive to take into account both the considerations of national security and the serious issues of legality, identified by the opinions of this Court, relating to the claim that the AEC has failed to comply with NEPA and thus to permit the informed appraisal, by the Executive, Congress and the public, contemplated by that statute. The Court limits its actions in this litigation to matters within the judicial province; it is in no position at this juncture to enter a stay order that would interject the Court into national security matters that lie outside its province.

The mandate will issue at 4 p. m. this afternoon, but will be stayed for an additional 24 hours if the Court is advised that the government wishes to present an application to the Supreme Court for review and stay.

## APPENDIX

### ORDER OF THE DISTRICT COURT

IT IS HEREBY ORDERED that the defendants furnish to this Court the documents hereafter listed (with respect to which defendants have formally invoked executive privilege) for in camera inspection to determine whether they contain a presentation or discussion of an environmental hazard of substance not alluded to in the environmental statement relating to the Cannikin test. All matters relating to the environment in these documents shall be included, but no matter that is involved directly in national security, as differentiated from the environment, or as involves foreign relations, as differentiated from the environment, shall be included in the material produced for the Court's inspection.

The documents referred to are as follows:

1. With reference to Annex B to the Larson affidavit (Exhibit 18) and item except Ia 1(a) item 1–A.

2. With reference to the Irwin affidavit (Exhibit 13) item 5–C.

3. With reference to the David affidavit (Exhibit 12) item 3.

vironment statement; either opinion of government officials or agencies, or a body of other responsible scientific opinion. The District Court may be able to determine the existence of such responsible opinion, without undertaking to pass on its ultimate scientific validity.

When analyzing the technical data *in camera*, the District Court judge may find it helpful, in order to enhance his comprehension of the documents lodged with him, to consider requesting a consultation with an expert provided by the government. This consultation should be undertaken with the corollary procedure of transcription of the comments in chambers, as reported by someone acceptable to the government, with the transcript to be kept under seal.

4. With reference to the Ruckelshaus affidavit (Exhibit 14) item 5.

5. With reference to the Train affidavit (Exhibit 11) items 3(a), 3(b) and 3(c).

Pursuant to the provisions of 28 U.S. C. § 1292(b) it is the opinion of the Court that the foregoing order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation.

IT IS FURTHER ORDERED that the execution of this order is stayed pending review by the Court of Appeals pursuant to the provisions of 28 U.S.C. § 1292(b).