**Ralph NADER et al., Appellants,**

v.

**Earl H. BUTZ, Secretary of Agriculture, et al.**

**No. 72-1418.**

United States Court of Appeals,
District of Columbia Circuit.

Aug. 21, 1972.

Mr. William A. Dobrovir, Washington, D. C., was on the motion for summary reversal for appellants.

Messrs. Alan S. Rosenthal and Irwin Goldbloom, Attys., Dept. of Justice, were

on the motion for summary affirmance for appellees.

Before FAHY, Senior Circuit Judge, and ROBINSON, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

■ This appeal is from an order of the District Court dismissing a suit attacking the level of price support established for milk and milk products during the 1971–72 marketing year. The basis for dismissal was the court's view that the subsequent setting of the price support level for the marketing year 1972–73 rendered the action moot. We conclude that, in present circumstances, it cannot be said that the challenged determination for 1971–72 did not affect the determination for 1972–73, and we find that appellants were deprived of an opportunity to show that in fact it did. We accordingly reverse the order terminating the litigation for mootness.

The Secretary of Agriculture is statutorily authorized and required to fix for each marketing year the level of price support, as a percentage of parity, for milk, butterfat and the products of each.[1] On March 12, 1971, it was announced that the price support level for the marketing period from April 1, 1971, through March 31, 1972, would be $4.66 per hundredweight, as it has been for the preceding year.[2] Two weeks later, on March 25, 1971, however, the 1971–72 level was raised to $4.93.[3]

Appellants[4] filed in the District Court a complaint, later amended, seeking a judgment declaring that the March 25 determination was unlawful and an injunction against the continuance of price support during 1971–72 at any level higher than the $4.66 figure.[5] Appellants alleged that the March 25 increase was influenced by exertions of pressure by members of Congress and by the promise or expectation of political contributions from dairy interests.[6] Appellants further alleged that dairy organizations had contributed $35,000 between March 22 and March 24 and an additional $287,500 since then. Appellants sought discovery of the political-contribution practices of these organizations, and of a nexus between them and the March 25 decision.

On March 9, 1972, during the pendency of the suit in the District Court, it was announced that the $4.93 price support level would be continued for the marketing year beginning on April 1 following.[7] Shortly thereafter, appellees moved to dismiss the suit for mootness, pointing out that the March 25, 1971, order had expired by its own terms,[8] and appellants moved to amend their complaint to encompass the new price sup-

---

1. 7 U.S.C. § 1446(c) (1970). The parity price is computed by a statutory formula designed to give the supported commodities the same purchasing power, in terms of goods and services purchased by farmers, that the commodities possess in a specified base period. 7 U.S.C. § 1301(a) (1970). The Secretary is required to take into consideration a number of factors in making his determination, 7 U.S.C. § 1421(b) (1970), and, to the extent practicable, to announce the level of price support for milk prior to the beginning of the marketing year, 7 U.S.C. § 1426 (1970).

2. Commodity Credit Corp. Docket MCP 98a, Milk Price Support Program, 1971–72 (approved by Secretary of Agriculture Mar. 22, 1971).

3. 36 Fed.Reg. 8237 (1971). See also Commodity Credit Corp. Docket MCP 98a,

Amendment 1, Milk Price Support Program, 1971–72 (approved by Secretary of Agriculture May 25, 1971).

4. Appellants are Ralph Nader, Public Citizens, Inc., the Federation of Homemakers, and the Consumers Association of the District of Columbia.

5. The defendants-appellees here, were the Secretary of Agriculture and the Commodity Credit Corporation. The latter is the governmental instrumentality implementing the mechanism of price supports for agricultural products. See 7 U.S.C. §§ 1424, 1446a, 1446a–1 (1970).

6. D.C. Federation of Citizens Ass'ns v. Volpe, 148 U.S.App.D.C. 207, 221, 222, 459 F.2d 1231, 1245, 1246 (1971).

7. 37 Fed.Reg. 6567 (1972).

8. See 7 U.S.C. § 1421(d) (1970).

port determination as well as the old.[9] The District Court denied appellants' motion, granted appellees' and dismissed the suit as moot.[10] This appeal followed, and both parties have moved for summary disposition.[11]

■ In consequence of the constitutional limitation of federal court jurisdiction to "cases" and "controversies," [12] litigation becomes moot whenever it tenders for judicial resolution no more than an abstract or hypothetical question.[13] Beyond that, a court may decline to adjudicate an action which, although not moot in the constitutional sense, presents no concrete controversy.[14] It is unnecessary to consider whether the price support determination for 1972–73 merely continued the 1971–72 level in force or whether it technically supplanted the prior level. If the former, no ar-

gument is required to demonstrate that the controversy over improper influence did not become abstract. But even if the sequence of events produced an independent decision for 1972–73, there remained the question whether the improprieties charged to the 1971–72 determination might also have tainted the 1972–73 determination. If so, the controversy involving the older price support level did not evaporate upon formulation of the newer.[15]

It is not so evident that the 1972–73 price support level was uninfluenced by the 1971–72 level that the matter could be disposed of without further exploration. There is substantial indication by the Department of Agriculture itself that the economic impact of a price support level is apt to endure considerably longer than the marketing year for which it is established.[16] Moreover, the

---

9. See Fed.R.Civ.P. 15(a).

10. Appellees also moved for summary judgment, supporting their motion by affidavits categorically denying appellants' allegations of impropriety and offering an explanation of the basis for the price support level established on March 25, 1971. Since the District Court dismissed appellants' action for mootness, it did not reach the motion for summary judgment. Thus we have no occasion on this appeal to reach it either.

11. Appellants seek summary reversal and appellees summary affirmance. See Natural Resources Defense Council v. Morton, 148 U.S.App.D.C. 5, 10, 458 F.2d 827, 832 (1972) ; United States v. Allen, 133 U.S.App.D.C. 84, 85, 408 F.2d 1287, 1288 (1969).

12. U.S.Const. art. III, § 2.

13. See, e. g., Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ; Sibron v. New York, 392 U.S. 40, 57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

14. See, e. g., Alton & S. Ry. v. Machinists Int'l, 150 U.S.App.D.C. 36, 463 F.2d 872 (1972). And see United States v. Hooper, 139 U.S.App.D.C. 171, 173, 432 F.2d 604, 606 (1970).

15. Ford Motor Co. v. United States, 335 U.S. 303, 313, 69 S.Ct. 93, 93 L.Ed. 24 (1948) ; Walling v. James V. Reuter, Inc., 321 U.S. 671, 674, 64 S.Ct. 826, 88

L.Ed. 1001 (1944) ; Southern Pac. Co. v. ICC, 219 U.S. 433, 452, 31 S.Ct. 288, 55 L.Ed. 283 (1911) ; Burrell v. Martin, 98 U.S.App.D.C. 33, 38 n. 16, 232 F.2d 33, 38 n. 16 (1955) ; Confederacion de la Raza Unida v. City of Morgan Hill, 324 F.Supp. 895, 897 (N.D.Cal.1971). These decisions are but applications of the broader doctrine that dissolution of a governmental act does not moot a challenge if it is outlived by adverse consequences to the litigant. See Benton v. Maryland, 395 U.S. 784, 790–791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) ; Street v. New York, 394 U.S. 576, 579–580, 89 S.Ct. 1354, 22 L.Ed.2d 572 n. 3 (1969) ; Sibron v. New York, supra note 13, 392 U.S. at 53–58, 88 S.Ct. 1889 ; Carafas v. LaVallee, 391 U.S. 234, 237–238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) ; Ginsberg v. New York, 390 U.S. 629, 633–634, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). While that principle is perhaps more frequently applied in criminal cases, it also does service in civil jurisprudence. See Justin v. Jacobs, 145 U.S.App.D.C. 355, 357, 449 F.2d 1017, 1019 (1971) ; Hudson v. Hardy, 137 U.S. App.D.C. 366, 368, 424 F.2d 854, 856 (1970).

16. Economic Research Service, U.S. Dep't of Agriculture, Impacts of Alternative Dairy Price Support Levels 1 (1972), inserted in the Congressional Record at 118 Cong.Rec. E2327–30 (daily ed. Mar. 9, 1972). This publication was a report

circumstances confronting this appeal lend support to the thesis that the level set for 1971–72 may have had repercussions for the level eventuating for 1972–73. It appears that for at least the past decade, the price support level for milk has generally been higher, but never lower, than it was for the preceding year.[17] The economic facts seem self-evident,[18] and in all important respects the 1972–73 determination is identical with that for 1971–72.[19] Indeed, in the words of the Secretary, the 1971–72 level was "continued" for 1972–73,[20] notwithstanding some change in economic conditions during the interim.[21]

In this milieu, it could not be ruled as a matter of law that the 1972–73 price support determination was unaffected by the 1971–72 determination which was the original target of appellants' action. By the same token, the improprieties appellants alleged as to the earlier decision were not negated simply by rendition of the later decision.[22] In sum, if the 1971–72 level remained at the original $4.66 figure, the 1972–73 level may well have been lower than $4.93. Appellants asked the District Court for a chance to implicate the 1972–73 level,[23] and it was error to dismiss their suit without affording them an opportunity to do so.[24] It goes without saying that we intimate nothing whatever as to any other aspect of the case.

The order of dismissal for mootness is reversed, and the case is remanded to the District Court for further proceedings.

Reversed and remanded.

---

to the Agricultural Stabilization and Conservation Service and it states:

The decision on the price support level for milk in the 1972–73 marketing year will have impacts on production, sales, Government costs, dairy farm income, and consumer costs for dairy products. These effects will extend over a number of years.

*Id.* at 1.

17. The price support level for milk has gradually risen from $3.11 for 1962–63 to $4.93 for 1972–73. In two instances it has remained constant for all or parts of consecutive marketing years, but in all other instances it has increased from year to year.

18. The economic facts seem self-evident. An elevation of the price support level for milk in turn increases the prices paid to dairy farmers for milk they produce, raises the price consumers pay for milk and milk products, and increases the outlay of taxpayers' money.

19. As announced on March 25, 1971, the price support level for milk was $4.93 and the support purchase prices for butter were 68.75 cents in the east and 67.75 cents in the west, for chedder cheese 54.75 cents, and for nonfat dry milk 31.07 cents. The figures, as announced on March 9, 1972, for 1972–73, were identical tor each item.

20. 37 Fed.Reg. 6567 (1972). See also U.S. Dep't of Agriculture News Release No. 854–72 at 2 (March 9, 1972).

21. Milk production costs had risen, so that the $4.93 figure, which represented 85% of parity in 1971–72, represented only 79% in 1972–73.

22. Appellees point out that appellants' proposed amendment did not allege that the determination for marketing year 1972–73 was itself improperly motivated. That consideration is beside the point. If the 1972–73 decision was significantly influenced by an *invalid decision for 1971–72*, appellants' lawsuit did not become moot. See cases cited *supra* note 15.

23. Fed.R.Civ.P. 15(a) specifies that "leave [to amend] shall be freely given when justice so requires." And see, *e. g.*, Christensson v. Hogdal, 91 U.S.App.D.C. 251, 255, 199 F.2d 402, 406 (1952) (rule is liberal, permitting amendments to change relief sought at least where scope of relief is diminished and defendant suffers no prejudice); Archbold v. McLaughlin, 181 F.Supp. 175, 177 (D.D.C.1960) (". . . the practice is to permit amendments freely to cure defective or imperfect pleadings, particularly to remedy objections raised on motions to dismiss.").

24. In this view, it is unnecessary to consider whether appellants' action survived appellees' mootness objection on any other basis.