**Ralph NADER et al., Plaintiffs,**

v.

**Earl H. BUTZ, Secretary of Agriculture**
**and**
**Commodity Credit Corporation,**
**Defendants.**

**Civ. A. No. 148–72.**

United States District Court,
District of Columbia.

Aug. 20, 1973.

William A. Dobrovir, Andra N. Oakes, Washington, D. C., for plaintiffs.

Irving Jaffe, Acting Asst. Atty. Gen., Irwin Goldbloom, David J. Anderson, Attys., Dept. of Justice, Washington, D. C., for defendants and Leonard Garment.

## OPINION

WILLIAM B. JONES, District Judge.

The plaintiffs in this case seek review and reversal of a 1971 determination of the Secretary of Agriculture ordering an increase in the price support level for fluid milk under 7 U.S.C. § 1446(c) (1970). The basic allegation of the complaint is that the price support determination was contrary to law because it was based on considerations extraneous to those allowed by statute in making that determination. Specifically, the plaintiffs allege that the price support was raised in exchange for a promise or expectation of campaign contributions to the Republican Party or its subsidiary committees or for the purpose of supporting the renomination of the incumbent President.

On May 4, 1972, after the entry of a new milk price support order on March 7, 1972, this Court dismissed this action as moot. That dismissal was reversed and the case remanded by the Court of Appeals. Nader v. Butz, 474 F.2d 426 (D.C.Cir.1972). In reversing, the Court of Appeals held that it could not be said as a matter of law that the new price support determination was unaffected by the original determination under challenge by the plaintiffs. After reversal, the plaintiffs were allowed to amend their amended complaint to include allegations that the subsequent order was

also so tainted. The plaintiffs have conducted intensive pretrial discovery since the reversal and order of remand.

Presently pending before the Court is the motion of Leonard Garment, serving as acting Counsel to the President and White House Custodian of Records, Custodian of Records of the Office Management and Budget, and Custodian of the Records of the Council of Economic Advisers, to stay pending appeal this Court's August 1, 1973 Order requiring him to produce on August 16, 1973, certain documents for in camera inspection by the Court in connection with a claim of executive privilege in response to a subpoena duces tecum. The motion for stay was filed August 15, 1973, and argument was had the next day. At the conclusion of that hearing the Court stated that it would take the motion under advisement and issue an opinion and order on the stay by August 20, 1973 and in the meantime, the August 1, 1973 Order requiring transmittal of the documents for in camera inspection would not be enforced.

This Court has ordered in camera inspection of certain documents on one prior occasion in this case. On December 19, 1972, the plaintiffs moved under Fed.R.Civ.P. 37 to compel the production of certain documents it had sought from the Department of Agriculture under Fed.R.Civ.P. 34 on October 12, 1972. The Department had claimed privilege, although not executive privilege, with respect to those documents on December 15, 1972. After two extensions of time in which to oppose that motion were agreed to by the plaintiffs, the defendants filed their opposition on January 10, 1973. On January 18, 1973, the plaintiffs moved for in camera inspection of those documents. That motion was opposed and in due course in camera inspection was ordered on March 13, 1973. The documents were turned over to the Court. After inspection, it was concluded that all the documents submitted should be turned over to the plaintiffs because they did not concern the decision making process which resulted in the milk order under challenge. Their disclosure would not pose a barrier to the free flow of information needed for government to function effectively.

At an April 6, 1973, hearing on other motions, the Court advised counsel for the defendants at a bench conference without plaintiffs' counsel present that it intended to turn over to the plaintiffs all the documents submitted in camera. Counsel for the defendants was given until April 26, 1973, to consider what action the defendants wished to take with respect to the proposed action by the Court before the documents were actually to be turned over to the plaintiffs. On April 26, 1973, counsel for the defendants informed the Court by letter that they would take no further action with respect to the in camera documents. On May 9, 1973, the Court signed an Order requiring that the documents submitted in camera be submitted to counsel for the plaintiffs, and those documents were so delivered.

On April 10, 1973, the plaintiffs filed a notice of deposition and served subpoenas duces tecum on the White House Custodian of Records, the Custodian of the Records of the Council of Economic Advisers, and the Custodian of the Records of the Office of Management and Budget. Service was made through counsel for the defendants. The subpoenas call for the production of any document in the control of those persons which refers to or relates to milk support orders for the period 1971–74, "the political importance or role of the dairy industry or dairy farmers, and political campaign contributions from the dairy industry, dairy farmers or dairy political groups or trusts." Also sought were records of any meetings or telephone conversations between August 1, 1970, and May 1, 1971, in which any of the above matters were discussed with any of a list of individuals and groups in an

attached Schedule A. Several other materials were sought, including written communications from or to the three agencies and individuals within them named in the subpoenas and the Department of Agriculture, present or former members of Congress, and those named in Schedule A.

On June 21, 1973, apparently after informal extension of the return date on the subpoenas,[1] counsel[2] for the custodian[3] objected in part to the subpoenas under Fed.R.Civ.P. 45(d). The objections were based on claims of privilege with respect to certain of the documents. On June 25, 1973, counsel for the plaintiffs moved for an order compelling compliance with the subpoenas and for in camera inspection. After two more stipulated extensions of time in which to file an opposition, the custodian responded on July 11, 1973.

In that response, Leonard Garment, serving as acting Counsel to the President, filed an affidavit and at the direction of the President asserted executive privilege with respect to 67 documents named in his affidavit. The affidavit describes each document with particularity as to date and the presence of attachments. In addition, the person or persons involved in the production and distribution of each document are described in a general fashion. Finally, the general subject matter of each document is set forth in brief, such as "memorandum concerning the dairy price support program." The final paragraph of the affidavit states the conclusion that the documents are subject to executive privilege, but fails to state with any particularity why any document is sub-

ject to the privilege. In other words, the final paragraph concludes that the documents are privileged, but nowhere in the affidavit are any facts given to support that claim. The affidavit is little more than a listing of documents for which executive privilege is claimed.

The vagueness of the affidavit was the central concern of the Court at the July 27, 1973, hearing on the motion to compel. The Court sought further clarification from counsel on the meaning of the affidavit, but none was forthcoming, except that none of the documents involved national security or diplomatic relations. The Court concluded that it could not properly consider any claim of executive privilege on. so barren a record. In order to gain further information on the nature of the documents, an order was signed on August 1, 1973, directing Mr. Garment, as custodian, to produce the documents for the Court's in camera inspection.

 In entering that Order, the Court followed the procedures for examining a claim of executive privilege as set forth in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S. App.D.C. 385, 463 F.2d 788 (1971). Reynolds dealt with a claim of privilege for military secrets. Although the instant case involves no military secrets, Reynolds sheds much light on the privilege issue. The Court held that if the trial court were satisfied from all the circumstances of the case that disclosure of the evidence would expose military secrets which should not be disclosed for national security reasons, even in cam-

1. The original return date on the subpoenas was May 15, 1973.

2. The defendants and the custodian are represented by the same Department of Justice attorneys.

3. At the July 27, 1973, hearing, the Court directed that counsel for the custodian pro-

vide the name of the custodian to the Court. When counsel was unable to do so, he was directed to provide the name to plaintiffs' counsel by July 30, 1973, so that the name could be included in the order directing in camera production. Mr. Garment was found to be the custodian in all three instances and thus the order requiring production ran against him.

era inspection would not be required. 345 U.S. at 10, 73 S.Ct. 528. Implicit in this statement is a requirement that the trial court must be satisfied without in camera inspection that the claim of privilege is a proper one. In the instant case, the Court found that the affidavit in support of the assertion of privilege was nothing more than a conclusion that the privilege should apply. Therefore, the Court followed the mandate of *Reynolds* that control over the evidence in a case cannot be left to the discretion of executive officers, 345 U.S. at 9–10, 73 S.Ct. 528, and required in camera production.

Such an in camera procedure was specifically authorized by the Court of Appeals in *Seaborg*. As in this case, the plaintiffs in *Seaborg* sought no documents which contained military or diplomatic secrets. The Court recognized, however, that executive privilege may still apply to protect intra-executive advisory opinions and recommendations. It concluded that in camera inspection of the documents was the proper course to take in determining which documents were subject to the privilege and entitled to a confidential status. 149 U.S. App.D.C. at 387, 463 F.2d at 792. Moreover, the Court in *Seaborg* clearly rejected the claim that the decision whether documents were covered by executive privilege is to be left to the sole discretion of the executive. *Id.* at 389–391, 463 F.2d at 792–794.

Counsel for the custodian argues that the decision in *Seaborg* has in effect been overruled or at least made doubtful by Environmental Protection Agency v. Mink, 410 U.S. 73, 93 S.Ct. 827, 35 L. Ed.2d 119 (1973). The Court rejected this theory at the July 27, 1973 hearing for several reasons. First, *Mink* was concerned solely with the exemptions to the Freedom of Information Act, 5 U.S. C. § 552(b) (1970). Therefore the forbidding of in camera inspection of na-

tional security documents in *Mink* has no relevance here both because there are no national security documents in this case and because the Freedom of Information Act is not involved. Second, the discussion in *Mink* of the intra-agency memorandum exemption to that Act is not strictly applicable to the present litigation outside the Act. Finally, although the Court in *Mink* held that in camera inspection should not be automatic in Freedom of Information Act cases, 410 U.S. at 93, 93 S.Ct. 827, it also held that in camera inspection would be necessary and appropriate if the agency could not otherwise demonstrate that particular documents were purely advisory. *Id.* The Court has held in this case that it cannot determine whether the documents listed in the Garment affidavit are privileged because that affidavit speaks only in conclusions and not in facts. Therefore the Court was bound to order in camera inspection in this executive privilege case, a procedure recognized by the Court in *Mink* as valid in such cases. 410 U.S. at 88, 93 S.Ct. 827.

On August 15, 1973, one day before the date set for delivery in camera, Mr. Garment as custodian noted his appeal in the United States Court of Appeals for the District of Columbia Circuit challenging the in camera inspection Order. Contemporaneously, Mr. Garment moved for a stay of this Court's Order pending appeal under the familiar principles of Virginia Petroleum Jobbers Ass'n v. FPC, 104 U.S.App.D.C. 106, 259 F.2d 921 (1959). That motion was opposed by counsel for the plaintiffs. At the oral hearing on August 16, 1973, Acting Assistant Attorney General Irving Jaffe, on behalf of Mr. Garment urged that this Court stay its August 1, 1973 Order for two reasons.

First, it was argued that a stay could not harm the plaintiffs even if they were successful because they would then

get the documents.[4] Second, counsel urged that the similarity of issues between this case and litigation currently pending before Chief Judge Sirica relating to the Watergate affair required that a stay be granted because that case was the most appropriate vehicle for the resolution of the executive privilege issue. Mr. Philip A. LaCovara, Counsel to the Special Prosecutor, and one of the attorneys of record In re Grand Jury Subpoena Duces Tecum Issued to Richard M. Nixon, 360 F.Supp. 1 (D.D.C.), informed the Court that he too thought that litigation was the most appropriate to resolve the executive privilege issue because he felt the proceeding better framed the issues. In addition he noted that a hearing will be held on August 22, 1973, by Chief Judge Sirica on whether to vacate his July 26, 1973 order to show cause issued in connection with the subpoena duces tecum involved in that case, and that a decision was expected shortly thereafter.[5] Mr. Lacovara was of the opinion that whichever party lost in that litigation would have an immediate right to review, whether by appeal, mandamus, or otherwise.

Mr. William A. Dobrovir, counsel for the plaintiffs, urged that the Court not grant a stay in this case because of the dissimilarity of issues from the *Grand Jury Subpoena* case. It was pointed out that the instant case is a civil action rather than a grand jury proceeding, that tape recordings alone are involved in the grand jury case, and that the President himself is a party to that proceeding. In the alternative Counsel argued that the Court condition any stay on the pursuit of an expedited appeal schedule by counsel for Mr. Garment.

■ The motion for stay pending appeal will be granted. In doing so, the Court does not retreat from its earlier view that in camera inspection of the documents is required under present law. But at the same time the Court recognizes that the public interest will best be served by a fair and orderly disposition of the public controversy surrounding executive privilege. A stay, it is hopeful, will facilitate that process.

This Court well appreciates that any action it might take on disclosure of the documents for which privilege is claimed, whether in favor of the plaintiffs or of the custodian, will not finally resolve the matter. Final resolution can come only on review, it is expected, by the Supreme Court of the United States.

The resolution of the controversy regarding the nature and scope of the doctrine of executive privilege is of importance and concern not only to the litigants here and in Chief Judge Sirica's cases, but also to the government and the citizens of the United States. Rarely have such complex and important legal issues ever commanded the attention and concern of the public as has executive privilege. In granting this stay pending appeal the Court takes what it believes to be the most responsible course of action to allow the issue of executive privilege to be considered and determined on appeal and eventually in the Supreme Court along with the related executive privilege questions raised in the *Grand Jury Subpoena* litigation. An appropriate Order will be entered with this Opinion.

---

4. As a subsidiary point, counsel argued that this case was now moot. Of course, the Court of Appeals has rejected this position once before. Nader v. Butz, 474 F.2d 426 (D.C.Cir. 1972).

5. The second executive privilege case before Chief Judge Sirica, Senate Select Comm. on Presidential Campaign Activities v. Nixon, C.A.1593–73, apparently is not yet at issue.